IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DIANE G. MELECH,                          :
                                          :
       Plaintiff,                         :
                                          :
vs.                                       :     CIVIL ACTION 10-0573-KD-M
                                          :
LIFE INSURANCE COMPANY OF                 :
NORTH AMERICA, et al.,                    :
                                          :
       Defendants.                        :

REPORT AND RECOMMENDATION

       The Motion to Dismiss CIGNA Corporation and CIGNA Holdings,

Inc. ("CIGNA Defendants") (Doc. 12) filed by CIGNA Defendants

has been referred for report and recommendation under 28 U.S.C.

§ 636(b)(1)(B) and Local Rule 72.2.  Federal question

jurisdiction and diversity jurisdiction have been invoked in

this Court under 28 U.S.C. §§ 1331, 1332.  After consideration,

it is **RECOMMENDED** that the Motion to Dismiss be granted and that

Defendants CIGNA Corporation and CIGNA Holdings, Inc. be

dismissed from this action.

       The facts are, briefly, as follow.  Plaintiff Diane Melech

filed suit against Defendants Life Insurance Company of North

America ("LINA"), CIGNA Defendants, Hertz Custom Benefit

Program, Pension and Welfare Plan Administration Committee

("PAWPAC"), and The Hertz Corporation ("Hertz") (Doc. 1).

Plaintiff contends that the CIGNA Defendants improperly denied

giving her long term disability benefits, improperly upheld the
decision upon appeal, and failed to appropriately review the
appeal (Doc. 1, p. 6).  Specifically, Plaintiff alleges that the
CIGNA Defendants are fiduciaries and parties at interest since
the entities serve as underwriters and/or claims administrators
for the plan, exercise authority of control respecting the
management or disposition of the plan assets, provide services
to the plan at issue, and are insurance companies (Doc. 1, pp.
3-4).  Plaintiff claims that the CIGNA Defendants failed or
refused to provide necessary documents to her, denied long term
benefits that she was entitled to, and did not provide a full
and fair appellate review (Doc. 1, pp. 7-8).

Defendants LINA, PAWPAC, The Hertz Corporation, and Hertz
Custom Benefit Program, filed an Answer (Doc. 6).  In the
Answer, LINA admitted that it issued the policy at issue,
administered the long-term disability claims thereunder, denied
Plaintiff's claims for long-term disability benefits, and upheld
its denial on appeal and appeal review (*Id*.).  Also, LINA
admitted that it corresponded with the Plaintiff in letters
dated November 29, 2007, April 17, 2008, and October 15, 2008
(*Id*.).  In its Answer, the Hertz Corporation admitted that it is
the Plan Sponsor (*Id*.).  LINA filed its Corporate Disclosure
Statement which explains that LINA is a 100% wholly owned
subsidiary of Connecticut General Corporation which is a 100%

wholly owned subsidiary of Cigna Holdings Inc., which in turn is a 100% wholly owned subsidiary of Cigna Corporation, and Cigna Corporation is a publicly traded corporation listed on the New York Stock Exchange (Doc. 7).

CIGNA Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure Rules 12(b)(1), (2), (3) and (6) for lack of personal jurisdiction, subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted (Doc. 12). CIGNA Defendants attached an affidavit explaining that they did not do business in the State of Alabama and had no role in the denial of Plaintiff's claim (Doc. 12-2, Ex. B).

Plaintiff filed her Response and argues that she should be allowed discovery to determine if the CIGNA Defendants "made the decision to deny Plaintiff's claim for benefits or had any part in such decision whatsoever" since the resolution of this issue is "decisive as to which standard of review governs in this case" as discussed in *Anderson v. Unum Life Ins. Co. of America*, 414 F.Supp.2d 1079, 1086 (M.D. Ala. 2006) (Doc. 17, p. 2, 6). Plaintiff attached letters regarding the policy and decision related thereto as Exhibits A-H, setting forth that the letters came from CIGNA Defendants and therefore CIGNA Defendants were involved in the benefits determination giving rise to this action (Doc. 17-2).

CIGNA Defendants filed its Reply and argue that discovery to determine the status of the CIGNA Defendants is "premature ... and a distraction from the simple issue before the Court – Plaintiff has named incorrect parties to this lawsuit." (Doc. 18, p. 2). Second, CIGNA Defendants point out that the letters attached as exhibits to Plaintiff's Response supports CIGNA Defendant's Motion to Dismiss because the footer of the letters states as follow (or substantially similar thereto):

> CIGNA and CIGNA Group Insurance are **registered service marks and refer to various operating subsidiaries** of CIGNA Corporation. Products and services are provided **by these** subsidiaries **and not by CIGNA Corporation.** These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

(Doc. 18, p. 5 citing to Exs. to Doc. 17)(emphasis added). Third, the CIGNA Defendants distinguish the *Anderson* action from this one in that in *Anderson*:

> the primary question regarding standard of review ... was whether the entity that made the decision had discretionary authority under the Plan to do so. Granting the CIGNA Defendants' motion and dismissing them from the case now still allows Plaintiff to argue whether LINA had the discretionary authority to make the benefits decision at issue.

(Doc. 18, p. 4)(citation omitted).

The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"

*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" "a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).  "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 550 U.S. 557) (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).  "Only

a complaint that states a plausible claim for relief survives a
motion to dismiss." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct.
1937, 1950 (2009) (citing *Twombley*, 550 U.S. at 556). "Where
the well-pleaded facts do not permit the court to infer more
than the mere possibility of conduct, the complaint has alleged—
but it has not 'show[n]'—'that the pleader is entitled to
relief.'" *Iqbal*, — U.S. —, 129 S.Ct. at 1950 (quoting
Fed.R.Civ.P. 8(a)(2)). As noted by the Supreme Court,
Plaintiffs must "nudge[] their claims across the line from
conceivable to plausible[; otherwise,] their complaint must be
dismissed." *Twombley*, 550 U.S. at 570. It is noted, however,
that a complaint may be dismissed, under Federal Rule of Civil
Procedure 12(b)(6), "on the basis of a dispositive issue of
law." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539
(11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)),
cert. denied, 502 U.S. 810 (1991).

Courts typically address personal jurisdiction issues
before subject-matter jurisdiction, failure to state a claim,
and venue because a "court without personal jurisdiction is
powerless to take further action." *Posner v. Essex Insurance
Co.*, Ltd., 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999); *see also*

*Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962)[1] ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss.").

A motion to dismiss for lack of personal jurisdiction should be "denied if the plaintiff has alleged sufficient facts to support a reasonable inference that the defendant can be subjected to the jurisdiction of the court." *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)(citation omitted).

When no evidentiary hearing has been held, the standard by which to decide the issue of personal jurisdiction is as follows:

> it is the plaintiff's burden to establish a prima facie case of personal jurisdiction over a nonresident defendant. *See Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). In considering the adequacy of a plaintiff's proffer, the Court is constrained to accept **uncontroverted** allegations in the Complaint as true and to resolve factual disputes in the plaintiff's favor, such that any factual conflict in the parties' respective affidavits and other written materials must be construed in the light most favorable to the plaintiff. *See Electronics for Imaging*, 340 F.3d at 1349; *Deprenyl Animal Health,*

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) ( en banc ), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

*Inc. v. University of Toronto Innovations Foundation*,
297 F.3d 1343, 1347 (Fed. Cir. 2002); *Akro Corp. v.
Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)
(plaintiff's factual allegations that are not directly
controverted are taken as true for purposes of
determining personal jurisdiction).

*HomeBingo Network, Inc. v. Chayevsky*, 428 F.Supp.2d 1232, 1240-41 (S.D. Ala. 2006)(emphasis added). The court may look to the following evidence in regards to determining the issue of personal jurisdiction:

> affidavits, interrogatories, depositions, oral
> testimony, or any combination of the recognized
> methods of discovery. *Washington v. Norton
> Manufacturing Co.*, 588 F.2d 441, 443 (5th Cir. 1979).
> In considering the evidence, the allegations of the
> complaint, except insofar as controverted by opposing
> affidavits, must be taken as true, and all conflicts
> in the facts must be resolved in favor of the
> plaintiff for purposes of determining whether a prima
> facie case for personal jurisdiction has been
> established. *See, Black v. ACME Markets, Inc.*, 564
> F.2d 681, 683 n. 3 (5th Cir. 1977); C. Wright, A.
> Miller & M. Kane, Federal Practice and Procedure §§
> 1351, 1363 (1969 & Supp. 1984). **However, mere
> conclusory statements cannot be relied upon to
> establish the prima facie case on the issue of
> personal jurisdiction**. *Barrett v. United States*, 646
> F.Supp. 1345 (S.D.N.Y. 1986), citing, *Newmark v.
> Abeel*, 102 F.Supp. 993, 994 (S.D.N.Y. 1952). **Mere
> averments of jurisdiction are not enough** nor may
> conclusory, unsupported statements contained in
> accompanying affidavits be relied upon to demonstrate
> jurisdiction. *Holfield v. Power Chemical Company*,
> Inc., 382 F.Supp. 388, 390 (D. Md. 1974). Furthermore,
> **affidavits based on personal knowledge are to be
> credited over contradictory allegations based merely
> on information and belief**, and facts adduced in
> opposition to jurisdictional allegations are
> considered more reliable than mere contentions offered
> in support of jurisdiction. *Barrett*, 646 F.Supp. at
> 1350.

*General Elec. Credit Corp. v. Scott's Furniture Warehouse Showroom, Inc.,* 699 F.Supp. 907, 910 (N.D. Ga. 1988)(citation omitted; emphasis added).  However, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), cert. denied 540 U.S. 872, 124 S.Ct. 205, 157 L.Ed.2d 132 (2003); *see Brewer v. Transunion, L.L.C.*, 453 F.Supp.2d 1346, 1347 (S.D. Ala. 2006) (quoting *Oxford* in a case with a motion to dismiss for personal jurisdiction). "When a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." *Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F.Supp.2d 1293, 1296 (S.D. Ala. 2003) (citations omitted).  "In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause." *HomeBingo*, 428 F.Supp.2d at 1242. "Where ... the reach of the state long-arm statute is coextensive with the limits of due process, these two inquiries coalesce into one." *Id*.  "Due

process authorizes the exercise of personal jurisdiction when both (1) the nonresident defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Id.* The nature and quality of the contacts depends on whether general or specific jurisdiction has been asserted. *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000).

A forum may exercise "general jurisdiction ... over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 421, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Also, a forum may exercise specific jurisdiction over a "defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414, n. 8.

"The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Brewer v. Transunion, L.L.C.,* 453 F.Supp.2d 1346, 1348 (S.D. Ala. 2006)(citation omitted).

In order to find contacts sufficient for specific jurisdiction, the court should look to three factors: (1) the

relationship between the contacts and the cause of action, (2) the degree to which the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum," and (3) the degree to which the defendant could "reasonably anticipate being haled into court" in the jurisdiction. *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993). If the court finds sufficient minimum contacts in determining specific personal jurisdiction, it must then determine whether the exercise of personal jurisdiction would offend the "traditional conception of fair play and substantial justice." *International Shoe Co., v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

ERISA preempts and does not recognize claims based on oral representations that contradict unambiguous written plan terms. *See Alday v. Container Corp. of Am.*, 906 F.2d 660, 665-66 (11th Cir. 1990). "Accordingly, the need to scrutinize plan documents in their entirety is crucial, particularly when those documents are in the exclusive control of the defendant." *Burks v. American Cast Iron Pipe Co.*, 212 F.3d 1333, 1338 (11th Cir. 2000)(finding district court erred in granting summary judgment against plaintiff where plan documents were necessary, as was additional discovery because the documents would determine whether ERISA even applied since there was a question as to when the plan was enacted and claims accrued).

"Resolution of a pretrial motion that turns on findings of fact-for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)-may require some limited discovery before a meaningful ruling can be made." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). "On the other hand, the Court recognizes that there may be times when it would be an abuse of discretion to allow such discovery if there are no legitimate grounds upon which jurisdiction could lie." *Steinberg v. Barclay's Nominees (Branches) Ltd.*, 2007 WL 4287662, * 2 (S.D. Fla. Dec. 5, 2007)(holding that the S*teinberg* facts were atypical since there was no plaintiff client for the attorney to discern information from regarding personal jurisdiction of the defendant, and in turn the court allowed limited discovery).

"[H]olding companies are investment companies for the purpose of diversifying risk [and] [a]s such, they do not conduct the same business as their subsidiaries and their relationship cannot be viewed as one of agency." *Vogt v. Greenmarine Holding, LLC,* 2002 WL 534542, *7 (N.D. Ga. Feb. 20, 2002)(citation and quotation omitted). In regards to the parent holding company and subsidiary relationship:

> it is well established that as long as a parent and a
> subsidiary are separate and distinct corporate
> entities, the presence of one in a forum state may not
> be attributed to the other ... Generally, a foreign
> parent corporation is not subject to the jurisdiction

of a forum state merely because a subsidiary is doing
business there. Where the subsidiary's presence in the
state is primarily for the purpose of carrying on its
own business and the subsidiary has preserved some
semblance of independence from the parent,
jurisdiction over the parent may not be acquired on
the basis of the local activities of the subsidiary
... **in order to gain personal jurisdiction over a
parent based on the activities of a subsidiary, a
plaintiff would have to show that the subsidiary's
existence was simply a formality, and that it was
merely the parent's agent**.

*Id*. at *6 (citation and quotation omitted; emphasis added).

While Plaintiff cites to *Anderson* for support that holding

companies many times have control over the subsidiary to bolster

the argument that discovery is necessary, even in *Anderson*, the

parent and subsidiary were treated as separate entities. 414

F.Supp. 2d at 1098, n. 16. Also, in *Anderson* discretionary

authority was at issue because there was reason to believe the

holding company exercised authority over the benefits decision

since the evidence set forth indicated that the parent was

involved in the benefits determination. *Id*. at 1086-87.

Specifically, the policy set forth that the subsidiary had

authority to determine benefits, while the service agreement

indicated that the parent was to "[p]rovide comprehensive claims

management services, including: Review claims and medical files,

determine if claims are payable, maintain and search databases,

interview doctors, attorneys, employers and employees and

process claims for payment" and maintain "the exclusive right to

exercise discretion and control over associates performing services for [the subsidiary]." *Id*.  Additionally, courts have held that additional jurisdictional discovery is not appropriate where it is not necessary. *See Vogt*, 2002 WL 534542 at *7 citing to *Central States Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946-47 (7th Cir. 2000) (holding district court did not abuse its discretion in dismissing for lack of personal jurisdiction without allowing additional jurisdictional discovery from foreign defendant because plaintiff's evidence showed only that the parents were affiliated with the subsidiary, not that the parents exercised an "unusually high degree of control" over the subsidiary or that corporate formalities were not observed); *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 857 (5th Cir. 2000) (holding same where plaintiffs "offer[ed] nothing to support their conclusory assertion they **could** have established evidence to support their alter ego theory had discovery not been restricted," declarations of defendants negated possibility of alter ego finding, and plaintiffs did not provide any basis to conclude that defendants' deposition testimony would contradict their sworn declarations)(emphasis added).

CIGNA Defendants cite to *Portera v. Winn Dixie of Montgomery, Inc.*, wherein the plaintiff sued the parent company. 996 F.Supp. 1418, 1423-1424 (M.D. Ala. 1998).  The parent

defendant company was not licensed to do business in Alabama, had no agent for service of process in Alabama, owned no property, real or personal in Alabama, had no office, facility or store in Alabama, maintained no bank accounts in Alabama, had no telephone listings in Alabama, and had not entered into any contracts in Alabama. *Id.* at 1423. Additionally, the parent defendant developed a handbook used by the subsidiary, but the decision to use the book was deemed by the court as a unilateral decision by the third party subsidiary. *Id.* The *Portera* court cited the Supreme court standard in regards to unilateral decisions and personal jurisdiction, as follows: "unilateral activity of another party or a third person is not an appropriate consideration when determining whether the defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417. Accordingly, the *Portera* court held that there was no specific personal jurisdiction over the parent company because the defendant had "done nothing which link[ed] it to the facts of th[e] suit. *Id*. at 1423. Second, the *Portera* court found that there was no general personal jurisdiction over the parent defendant since there was no continuous and systematic business contacts where the parent merely "owned a subsidiary in Alabama, employed someone who is also employed by the subsidiary, and furnished some materials to the subsidiary." *Id*. at 1424.

In the present action, Plaintiff has not specified the type of jurisdiction sought. Nevertheless, jurisdiction fails under either theory. Here, the Plaintiff alleges in the complaint that the CIGNA Defendants are an insurance company, underwriter and/or claims administrator, exercised authority or control respecting the management of disposition of the plan assets, and/or provided services to the plan at issue (Doc. 1, pp. 3-4). However, CIGNA Defendants specify that both are merely holding companies (Doc. 7). In its Answer, LINA specifically admits that it issued the policy, administers the long-term disability claims thereunder, and that it denied Plaintiff's claims for long-term benefit under the policy as well as reviewed the appeal and upheld its appeal decision (Doc. 6, pp. 3-6). Also, Hertz Corporation admitted that it was the Plan Sponsor (Doc. 6, p. 4). Similar to the *Portera* case, CIGNA Defendants explained they were merely parent holding companies, are not licensed to do business in Alabama, have no agents in Alabama, own no property in Alabama, have no office in Alabama, maintain no bank accounts in Alabama, and have not entered into any contracts in Alabama to establish specific personal jurisdiction over either of the two entities.

Additionally, CIGNA Defendants state that: they did not do business in the State of Alabama; they did not issue the policy at issue; they did not offer insurance products or services to

the public; they did not enter into any agency contracts where third parties or/agents were to offer insurance products or services; they do not conduct or carry business or business ventures in Alabama, by mail or otherwise; they have no employees in Alabama; they have not entered into any contracts or agreements with the Plaintiff or Plaintiff's former employer, The Hertz Corporation; they are not party to any contract or policy at issue in this case; they had no role in the denial of Plaintiff's claim; they are not parties to any contract performable in whole or in part in Alabama; they have not processed, manufactured, or sold any products, materials, or things which have been used or consumed in Alabama in the ordinary course of commerce, trade, or use; they have not issued any products or services in relation to the disability coverage offered by LINA; and they have not appointed or employed any agents on their behalf to issue disability insurance or coverages in the Alabama or the disability policy at issue in this action (Doc. 12-2, Ex. B). At best, CIGNA Defendants, like the parent defendant in *Portera*, own a subsidiary who is subject to the jurisdiction of the court where the suit has been filed. Therefore, it appears that CIGNA Defendants do not have continuous and systematic business contacts in the state of Alabama to give rise to general personal jurisdiction.

Plaintiff attached letters as evidence to demonstrate CIGNA Defendants' specific involvement with the claims made by Plaintiff (Doc. 17-1).  However, LINA in its Answer admits that it wrote the letters dated November 29, 2007 (Ex. C), April 17, 2008 (Ex. G), and October 15, 2008 (Ex. H). These letters, respectively, denied Plaintiff's claim of benefits, upheld the decision to deny the claim, and reviewed the appeal and upheld the appeal decision.  Second, CIGNA Defendants point out that all the letters themselves explain that services and products are not provided by CIGNA Corporation and the use of the words "CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to actual subsidiaries (see footer of Docs. 17-1). Even though Plaintiff presumes without any proof that CIGNA Group is a shell company, besides the use of the words "CIGNA" and "CIGNA Group Insurance" as registered marks, nothing else in the letters refer specifically to the CIGNA **Corporation** or CIGNA **Holdings Inc.**  Third, merely because CIGNA Corporation and CIGNA Holdings Inc. are holding companies of LINA, this relationship is not enough to establish that the CIGNA Defendants were involved in the denial of Plaintiff's claims, in the appeal or review of the appeal. As the *Vogt* court explained, holding companies do not conduct the same business as their subsidiaries, but rather are investment companies. *Vogt*, 2002 WL 534542 at *7.  Plaintiff fails to offer proof that the CIGNA

Defendants exercised an unusually high degree of control over its subsidiary, or that the subsidiary acted merely as an agent. Rather, Plaintiff merely hopes to prove CIGNA Defendants' control with discovery. *See Vogt*, 2002 WL 534542 at *7. Plaintiff makes the conclusory statement that CIGNA Defendants may have exercised control or may have had some role in the benefits decision process. However, CIGNA Defendants specifically state that they did not have any role in the benefits determination process, and Plaintiff offers no evidence contrary thereto. Affidavits based on personal knowledge are credited over contradictory allegations based on belief. *General Elec. Credit Corp.*, 669 F.Supp. at 910. Plaintiff has not provided any basis to suspect that CIGNA Defendants' testimony in the future would contradict their sworn affidavit. See *Kelly*, 213 F.3d at 857. Plaintiff has not proffered sufficient reasons or evidence to warrant any discovery on the personal jurisdiction issue. Furthermore, since the Court finds that there is no personal jurisdiction, the other grounds asserted in the Motion to Dismiss have not been addressed.

In conclusion, for the reasons set out above, the Court finds that there is no personal jurisdiction over the CIGNA Defendants and, therefore, it is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 12) be granted and that Defendants CIGNA

Corporation and CIGNA Holdings, Inc. be dismissed from this action.

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within fourteen days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objection party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Transcript (applicable where proceedings tape recorded).**
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the

magistrate finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done this 1st day of March, 2011.

<u>s/BERT. W. MILLING, JR.</u>
UNITED STATES MAGISTRATE JUDGE